February 1, 2007


Hon. Carol B. Amon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Frank Romano
    Indictment #CR 06 313 (CBA)

Dear Judge Amon:

This sentencing letter is submitted as an addendum to the probation report which has been prepared with regard to Mr. Romano's sentencing scheduled for February 16, 2007. As Your Honor is aware, the government and the defense negotiated a plea agreement which required a stipulation as to the guideline calculations as well as an understanding that the defendant would not move for a downward departure.

In this matter, it is agreed between the government and the defense that the appropriate guideline range would result in a finding of Level 22 after consideration for acceptance of responsibility reduction. A Level 22 finding with a criminal history category I results in a sentencing range between 41 to 51 months. The Probation Department report also calculated a Level 22 guideline computation. Although the defendant has agreed not to request a downward departure, based on the factors highlighted in this letter, the defendant Romano will be requesting that Your Honor consider imposing the minimum guideline level sentence of 41 months in this matter. It is submitted that there are a number of reasons which support a minimum guideline sentence relating to Mr. Romano.

    I.   Nature of the Offense

As the Court is aware, between August 2005 until September 2005, the government executed eavesdropping warrants which included the cell phone number listed to "Ninuch Ltd." for the bread route

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.

company business operated by Mr. Romano. For several months, the government engaged in a Title III interception directly into the cell phone of Mr. Romano and listened to his conversations for a significant period of time. Likewise, defense counsel had an opportunity to review these conversations, and, despite the obvious criminal nature in extending illegal loans to other individuals, a review of these conversations reveals that Mr. Romano never individually became coercive directly with any of the individuals who owed him money.

For example, the various customers and debtors were simply advised by Mr. Romano to "pay the bread bill" or requested to make a payment as Mr. Romano had bills to pay. Further, if a customer needed some additional time to make a payment or did not have funds as requested, all of the alleged victims felt free to advise Mr. Romano of such a circumstance and would often pay at a later date or ask for an extension of time. The tape recordings are replete with a cordial business relationship between the parties and not the type of language or conduct that is associated with the term "extortion". Counsel for defendant Romano listened to all of these conversations and never heard an overt physical threat by this defendant nor did Mr. Romano engage in any conduct that could be construed or interpreted as violent.

The Probation Department report refers to a number of conversations which are typical messages left for an individual who has simply ignored his payment obligations and completely failed to communicate with Mr. Romano. There is also a referenced conversation between co-defendant Romano and Paradiso. The report did not reference any conversations between Romano and the actual debtors. In reality, whenever Mr. Romano spoke directly with a debtor, these conversations are business like and cordial without any overtone of physical intimidation. There are literally hundreds of conversations in the wiretap materials which support this view but the agents have reported to the Probation Department only those conversations which highlight their perspective concerning the crime. The conversations on pages 8 - 9 of the probation report occur as a result of one individual continually ignoring Mr. Romano's phone calls but paragraph 53 of the report outlines some equally important information. There is not a single individual who filed a loss affidavit in this matter and the amount of the loans involving Mr. Romano are typically less than $6,000.[1]

Additionally, Mr. Romano, who is obviously a hard working member of the community, was engaged in his legitimate business during

---

[1] The amount attributable to John Doe #1 does not involve Mr. Romano who did not plead guilty with regard to this predicate act as he was not directly involved in this transaction.

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.

the course of time the investigation was being conducted by the government.  Throughout the period of investigation, Mr. Romano is successfully operating a legitimate bread route delivering goods to restaurants or bakeries as part of a legitimate business.  It is submitted that the illegal extension of these loans constituted an extracurricular "side business" which has caused this 47 year old individual to become involved with his first significant involvement in the criminal justice system.  It should also be noted, and the government also does not allege otherwise, that Mr. Romano is not a made member of any organized crime family and his lifestyle is not consistent with the typical caricature which is portrayed in such a circumstance.

Accordingly, although there are several alleged victims, it is submitted that the amounts involved are relatively modest and the circumstances as they relate to Mr. Romano are such that the present guideline more than constitutes equitable punishment in the context of the factors and circumstances of this case.

II.  Nature of the Defendant's Incarceration

In the present case, there are two factors which should be evaluated by the Court that also suggest the imposition of a minimum sentence is warranted.  Although it is not subject to some type of guideline analysis, Mr. Romano is a classic case of an individual who could probably have obtained his release pending bail pertaining to this case.  Based on the absence of any significant criminal past, under typical circumstances, Mr. Romano could have insisted on the presentation of a bail package and been out of custody for this period of time.

However, at the early stage of the litigation, the defendant acknowledged his involvement in the circumstances and elected to accept his incarceration in light of the proposed guideline in this type of case.  Despite attempting to be involved in a new business venture at the time of his arrest, Mr. Romano opted to accept the circumstances relating to his arrest and did not request counsel to aggressively pursue a bail package in this matter.

However, as a result of this decision, Mr. Romano has been placed in segregated housing on two separate occasions relating to this matter.  First, at the time of his arrest, he was placed in segregated housing at Metropolitan Detention Center (MDC) which is typical for all new arrested inmates. However, in December, 2006 Mr. Romano was transferred to Metropolitan Correctional Center (MCC) from MDC which resulted in a significantly greater period of segregated housing at MCC.

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.

In a letter dated December 28, 2006, our office outlined to Your Honor the circumstances of this particular transfer and the fact that Mr. Romano spent two weeks in segregated housing at MCC due to a transfer authorized by the Bureau of Prisons.

Traditionally, the courts have recognized a downward departure based on an individual defendant whose status has resulted in his placement in solitary confinement.  See e.g., United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994); United States v. Graham, 83 F.3d 1466 (D.C. Cir. 1996); United States v. Long, 977 F.3d 1264 (8th Cir. 1992).  Further, decisions in the Second Circuit have affirmed District Court departures based on circumstances where a defendant has been incarcerated in a harsher environment than would typically occur to a defendant in the general population. See, United States v. Hernandez-Santiago, 92 F.3d 97 (2d Cir. 1996)(noting that the District Court granted a downward departure of there levels based on defendants 22 month incarceration in a state facility which was a "harsher incarceration"); See also, United States v. Sutton, 973 F.Supp. 448 (DNJ 1997)(holding that a sentencing court is not foreclosed as a matter of law from considering the pre-trial incarceration as a basis for departing downward).

This Court is familiar with the Second Circuit decision in United States v. Lara, 905 F.2d 599 (2d Cir. 1990), where the Court authorized a downward departure due to the unique nature of possible victimization of the potential defendant.  However, the Lara decision is also relevant to the present case for another reason.  In that case, the particular defendant was required to be placed in solitary confinement during the course of his incarceration as the result of a propensity for him to be victimized due to his sexual orientation by placing him into solitary confinement and the Second Circuit noted that such a situation constitutes a basis for a downward departure.

Although the defendant is not requesting a downward departure, the fact that the defendant has spent almost one month of his incarceration in segregated housing constitutes a factor which militates in favor for the consideration of a minimum guideline sentence in this matter.

      III.   Personal Circumstances

As reflected in the probation report, Mr. Romano has a close personal relationship with his older brothers and a woman identified in the report as Rhonda Galano.  Ms. Galano and the family have been strongly supportive of Mr. Romano and have always indicated great care and concern for his well being.

In preparing for sentence before the Court counsel has learned

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.

that, although Mr. Romano does not have any children of his own, he has always been successfully involved with restaurant businesses and has donated substantial resources and time to the community during holidays.

Enclosed with this letter are a series of letters from family and friends revealing Mr. Romano's restaurant's would often have an "open door policy" for those who were either homeless or needy during the holiday season. Mr. Peter Ferrantelli writes in his letter that Mr. Romano "would set up the restaurant as a soup kitchen and feed homeless people." His brother, Joseph Romano, writes in his letter to Your Honor that "Frank would donate several gift certificates for free meals to the poor and unfortunate...every Thanksgiving he would close down his restaurant and open his door to those who did not have a place to go or anything to eat." Joseph Romano also indicated that any extra food would be given to Nursing Homes or other facilities. Likewise, Paul and Marcia Ballow indicated that Mr. Romano's involvement in the restaurant business would also result in feeding the homeless during the Christmas holidays.

It is also true Mr. Romano worked hard regarding his legitimate businesses. While listening to the wire taps this attorney was surprised at the long hours Mr. Romano worked in the bread route business to satisfy his potential customers and his good friend, Rhonda Galano, summarizes his work ethic when she indicated to the Court, "I have seen him work 24 hours straight to cater to his customers needs and requests. Answering the phone in the middle of the night to add or change orders was a nightly occurrence." The series of letters attached to this offices' sentencing letter constitute a history of Mr. Romano's past efforts in the community as well as a tribute to his work ethic in legitimate business activity.

Although this Court is familiar with departure case law based on involvement in the community (See e.g. <u>United States v. Rioux</u>, 97 F.3d 648 2d Cir. (1996), these factors are submitted in order to furnish justification for the proposition that a minimum guideline sentence is more than fair and reasonable in light of the background of Mr. Romano. On this basis, it is submitted that the reference letters submitted furnish another reason for supporting the view that a 41 month jail sentence is more than adequate in this matter.

    <u>Conclusion</u>

For all of the reasons stated previously, counsel for the defendant Romano will be requesting that the Court impose a 41 month jail sentence in this matter. It is respectfully submitted

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.

that a minimum guideline sentence in this matter is both fair and reasonable from the perspective of both the government and the defense.  Finally, our office will be requesting that the Court recommend that the defendant be permitted to serve his sentence and be designated to a specific federal institution at the time of sentence.

                              Very truly yours,


                              Joseph A. Gentile

df  
Enc.  
cc: AUSA Joey Lipton  
    Probation Officer Lisa Langone

AcroPDF - A Quality PDF Writer and PDF Converter to create PDF files. To remove the line, buy a license.